UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America

      v.                        Crim. Action No. 2:90-cr-92-wks

Robert J. Rideout

## REPORT AND RECOMMENDATION
(Docs. 72, 75)

Defendant Robert Rideout has moved under 28 U.S.C. § 2255 to set aside the judgment in this case and correct the five-year sentence imposed for violating the terms of his supervised release. (Doc. 72.) For the reasons stated below, I recommend that Rideout's § 2255 Motion be GRANTED and that the Court correct the sentence imposed on Rideout for violating the terms of his supervised release.

## Background

On February 14, 1992, Rideout agreed to plead guilty to violating 18 U.S.C. § 922(g)(1) for possessing a handgun as a previously convicted felon. (Doc. 30 at 1, ¶ 3.) The Armed Career Criminal Act (ACCA), partially codified as 18 U.S.C. § 924(e)(1), imposes a 15-year mandatory minimum and a maximum of life if the felon in possession of a handgun has had "three previous convictions by any court . . . for a violent felony or a serious drug offense." *Id.*; *see Johnson v. United States*, 135 S. Ct. 2551, 2563 (2015). At Rideout's sentencing hearing on December 28, 1992, the district court considered whether Rideout's previous state convictions were violent felonies that triggered this 15-year mandatory minimum. (Doc. 46

at 5.) Specifically, Rideout had been previously convicted of three state offenses that potentially qualified as predicate violent felonies: two breaking and entering-daytime offenses committed on June 7, 1979, in violation of Vt. Stat. Ann. tit. 13, § 1202; and an armed robbery offense committed on July 9, 1979, in violation of Vt. Stat. Ann. tit. 13, § 608(b). (*See generally* Doc. 46); *State v. Rideout*, 2007 VT 59A, ¶ 2, 182 Vt. 113, 933 A.2d 706. Ultimately, the district court determined that Rideout's prior convictions were violent felonies and applied the 15-year mandatory minimum under 18 U.S.C. § 924(e) (*see* Doc. 46 at 25), sentencing Rideout to 180 months in prison, to be followed by a five-year term of supervised release. (Doc. 42 at 2, 3; Doc. 43 at 2, ¶ 7.) Rideout's sentence was affirmed on direct appeal.[1] *See United States v. Rideout*, 3 F.3d 32, 35 (2d Cir. 1993). After serving his 15-year sentence, Rideout was released in 2003, and began serving his five-year term of supervised release. (Doc. 90 at 2.)

In 2004, the State of Vermont charged Rideout with two counts of lewd and lascivious conduct with a child in violation of Vt. Stat. Ann. tit. 13, § 2602 (*id.*), and one count of dispensing a regulated drug to a minor in violation of Vt. Stat. Ann. tit. 18, § 4227(a). *See Rideout*, 2007 VT 59A, ¶ 2. After Rideout was convicted by a jury in April 2005, the state court sentenced Rideout to two concurrent sentences of 20 to 50 years under the habitual-criminal statute. *Id.*; *see also* Vt. Stat. Ann.

---

[1] On appeal, Rideout argued that, for sentencing purposes, the two breaking and entering-daytime offenses committed on June 7, 1979 should be counted as a single "crime spree" instead of two distinct crimes. *See United States v. Rideout*, 3 F.3d 32, 33 (2d Cir. 1993). The Second Circuit disagreed, holding that "Rideout's two Breaking and Entering-Daytime convictions for offenses committed against different victims separated by at least twenty to thirty minutes and twelve to thirteen miles qualify as offenses 'committed on occasions different from one another' for purposes of section 924(e)." *Id.* at 35.

tit.13, § 11. The Vermont Supreme Court affirmed Rideout's conviction on direct appeal. *Rideout*, 2007 VT 59A, ¶ 39.

On September 11, 2006, this Court concluded that Rideout violated his conditions of supervised release based on the police affidavit describing Rideout's lewd and lascivious conduct. (Doc. 65 at 1.) The Court sentenced Rideout to 60 months, or five years, consecutive to the state sentences imposed on Rideout. (*Id.* at 2.) This five-year term was authorized by 18 U.S.C. § 3583(e)(3), which provides that upon revocation of supervised release, a defendant may be sentenced to one to five years in prison, depending on the seriousness of the underlying offense. Specifically, 18 U.S.C. § 3583(e)(3) states that a defendant whose supervised release is revoked may not be required to serve:

> more than 5 years in prison if the offense that resulted in the term of supervised release is a class A felony, more than 3 years in prison if such offense is a class B felony, more than 2 years in prison if such offense is a class C or D felony, or more than one year in any other case.

An offense is classified as a class A felony if the maximum term of imprisonment authorized is life imprisonment. 18 U.S.C. § 3559(a)(1). Because Rideout was sentenced under § 924(e)(1), he faced the possibility of life in prison, *see Johnson*, 135 S. Ct. at 2555; accordingly, Rideout's underlying offense was judged a class A felony and he was subject to the maximum five-year term of imprisonment for violating the terms of his supervised release. *See* 18 U.S.C. § 3583(e)(3).

In early 2018, Rideout and the State of Vermont entered into an agreement reducing his two concurrent sentences of 20 to 50 years to new concurrent sentences of 8 to 20 years, which retroactively commenced on July 12, 2005. (Doc. 75 at 2.)

Then, in mid-2018, the State of Vermont concluded that Rideout had served his concurrent sentences and, in June 2018, Rideout was transferred to federal custody to serve his five-year term for violating his supervised release. (*Id.* at 2–3; *see also* Doc. 72 at 12.)

On August 8, 2018, Rideout filed the § 2255 Motion presently before this Court. In the Motion, Rideout alleges that, in light of *Johnson*, 135 S. Ct. 2551 and *Sessions v. Dimaya*, 138 S. Ct. 1204, 1216 (2018), his prior state convictions can no longer serve as predicate violent felonies under 18 U.S.C. § 924(e)(2)(B). (Doc. 72 at 4.) In a supplemental memorandum, he specifies that the Vermont breaking and entering-daytime statute is overbroad and does not fall within the scope of generic burglary and that Vermont's assault and robbery statute does not involve the use or threatened use of physical force. (Doc. 86 at 4–5, 9.) Accordingly, he asks the Court to set aside the judgment for violating his supervised release and resentence him without applying § 924(e)(1).

The government initially opposed Rideout's § 2255 Motion. (*See* Doc. 75.) But in a recent filing, the government states that it has decided "not to defend Rideout's two burglary convictions as . . . predicates." (Doc. 90 at 4.) Further, the government waives reliance on any statute of limitations defenses or other procedural bars. (*Id.*) As a result, the government "does not object to the district court resentencing Rideout to a three-year term of supervised release, nor does the government "object to a reduction of the violation sentence to two years, the maximum term applicable to his revocation under 18 U.S.C. § 3583(e)(3)." (*Id.*)

4

## Analysis

Although the government has chosen not to defend Rideout's predicate convictions for breaking and entering-daytime, this Court has an independent obligation to examine the legal basis for correcting Rideout's sentence. Concluding that Rideout's convictions for breaking and entering-daytime do not fit within the scope of generic burglary set forth § 924(e)(2)(B)(ii),[2] those convictions cannot serve as predicates for increasing Rideout's prison term to a minimum 15-year term with a maximum of life. Absent this sentencing range imposed pursuant to § 924(e)(1), Rideout's underlying offense cannot be classified a class A felony subject to the maximum five-year term of imprisonment for violating the conditions of his supervised release. As a result, I recommend that the Court correct the sentence imposed on Rideout for violating the terms of his supervised release.

---

[2] As stated above, Rideout also argued in his § 2255 Motion that his conviction for assault and robbery under Vt. Stat. Ann. tit. 13, § 608(b) cannot qualify as a crime of violence under § 924(e)(2)(B)(i)—the so-called force clause—because Vermont's assault and robbery statute "does not have as an element the use or threatened use of physical force." (Doc. 86 at 9–11.) But the U.S. Supreme Court recently concluded that a statute may constitute a violent felony under the force clause even if the physical force may be minor and may not cause pain or injury, because the "definition of violent force is concerned with only the potential of the force to cause pain or injury, rather than the likelihood that it will." *United States v. Moore*, 916 F.3d 231, 242 (2d Cir. 2019) (emphasis omitted) (citing *Stokeling v. United States*, 139 S. Ct. 544, 554 (2019)).

For the purposes of Vermont's assault and robbery statute, Vt. Stat. Ann. tit. 13, § 608(b), assault is defined as causing, attempting to cause, or putting another in fear of bodily injury. *See* Vt. Stat. Ann. tit. 13, § 1023; *see also State v. Francis*, 151 Vt. 296, 306, 561 A.2d 392, 398 (1989) (holding "that the assault component of § 608 is properly understood to incorporate the elements of assault as defined in [Vt. Stat. Ann. tit. 13] §§ 1023 and 1021"). Because proving assault in Vermont necessitates proving at least the potential of bodily injury, under *Stokeling*, it appears that Vt. Stat. Ann. tit. 13, § 608 falls within the scope of the force clause. *See Stokeling*, 139 S. Ct. 544, 553 (reiterating that "physical force" in § 924(e)(2)(B)(i) "means . . . force capable of causing physical pain or injury" (internal quotation marks omitted)).

Nevertheless, the Court need not definitively answer this question because, as noted below, the Court concludes that Rideout's breaking and entering-daytime convictions cannot serve as the predicate convictions under § 924(e)(2)(B).

As stated above, 18 U.S.C. § 924(e)(1) imposes a 15-year mandatory minimum and a maximum of life if the defendant has "three previous convictions by any court . . . for a violent felony or a serious drug offense." *Id.*; *Johnson*, 135 S. Ct. at 2555. Section 924(e)(2)(B) defines a "violent felony" as

> any crime punishable by imprisonment for a term exceeding one year . . . that—
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

As drafted, § 924(e)(2)(B)(ii) contains two subsections: a list of enumerated offenses and the now-defunct residual clause.[3] *See Johnson*, 135 S. Ct. at 2563 (holding "increased sentence under the residual clause of the Armed Career Criminal Act violates the Constitution's guarantee of due process"). "To determine whether a prior conviction is for generic burglary (or other listed crime) courts apply . . . the categorical approach: They focus solely on whether the elements of the crime of conviction sufficiently match the elements of generic burglary, while ignoring the particular facts of the case." *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016).

In conducting that comparison, "[a] prior state conviction . . . does not qualify as generic burglary under [§ 924(e)(2)(B)(ii)] where 'the elements of [the relevant

---

[3] Given that the residual clause—"or otherwise involves conduct that presents a serious potential risk of physical injury to another"—is plainly obsolete, *see Johnson v. United States*, 135 S. Ct. 2551, 2564 (2015), the Court need not consider whether Rideout's prior convictions fall under the clause.

6

state statute] are broader than those of generic burglary.'" *United States v. Stitt*, 139 S. Ct. 399, 405 (2018) (last alteration in original) (quoting *Mathis*, 136 S. Ct. at 2257). Generic burglary is defined as "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." *Id.* at 405–06 (internal quotation marks omitted). Because this definition includes "ordinary, run-of-the-mill burglaries as well as aggravated ones," *id.* at 405 (internal quotation marks omitted), the generic-burglary definition does not include conduct that presents a serious risk of physical injury to another. *Taylor v. United States*, 495 U.S. 575, 597 (1990). Finally, the definition of generic burglary does not only apply to buildings or structures but also applies to "vehicles designed or adapted for overnight use." *Stitt*, 139 S. Ct. at 407.

In comparison to generic burglary, when Rideout was convicted in 1979, Vermont law defined breaking and entering-daytime as follows:

> A person who in the nighttime[4] breaks and enters a dwelling house, barn, church, courthouse, townhouse, college, academy, schoolhouse, bank, warehouse, office, shop, store, grocery, manufactory, mill, steamboat or vessel, railroad car or saloon, or any other building or structure, in which personal property, the subject of larceny, is situated, with intent to commit murder, rape, robbery, larceny or other felony, shall be imprisoned in the state prison not more than fifteen years or fined not more than $1,000.00 or both.

Vt. Stat. Ann. tit. 13, § 1201 (1979) (repealed 1981). The former statute thus listed various places that, if burgled, satisfy an element of breaking and entering-

---

[4] Breaking and entering-daytime, as codified in Vt. Stat. Ann. tit. 13, § 1202, adopts this definition of breaking and entering but provides for a 10-year maximum term of imprisonment rather that a 15-year statutory maximum.

7

daytime.[5] *See Mathis*, 136 S. Ct. at 2249 (stating that some statutes "enumerate[] various factual means of committing a single element"). Some of the listed places—"steamboat or vessel" and "railroad car"—refer to vehicles, rather than buildings or structures. Moreover, the statute did not limit breaking and entering to those steamboats, vessels, and railroad cars that have been adopted for overnight accommodation. *Cf. Stitt*, 139 S. Ct. at 407. Although it is arguable that a "steamboat or vessel" and a "railroad car" may be customarily used for overnight accommodation, both parties agree that these phrases cover some conduct outside the scope of generic burglary. (Doc. 86 at 5; Doc. 90 at 3–4.) In a similar situation—where the parties agreed that some of the listed places fell under generic burglary while other enumerated places did not—the U.S. Supreme Court held that the statute as a whole could not count as a predicate conviction under the ACCA. *Mathis*, 136 S. Ct. at 2257. Accordingly, because the former version of Vt. Stat. Ann. tit. 13, § 1202 is broader than generic burglary, Rideout's convictions under that law cannot be used to impose a 15-year mandatory minimum under 18 U.S.C. § 924(e)(1).

Further, as the district court noted at Rideout's original sentencing in 1992, absent the 15-year mandatory minimum, the total "range of incarceration would be 130 to 162 months." (Doc. 46 at 25.) Such a sentencing range is classified as a class C felony because the maximum term is less than 25 years, but more than 10 years.

---

[5] The present version of Vt. Stat. Ann. tit. 13, § 1201 defines burglary as "enter[ing] any building or structure knowing that he or she is not licensed or privileged to do so, with the intent to commit a felony, petit larceny, simple assault, or unlawful mischief." The definition no longer contains a list of enumerated places that can be burgled. *Id.*

18 U.S.C. § 3559(a)(3).  For a class C felony, a court may impose a maximum term of three years of supervised release and, moreover, the maximum term for violating the supervised release is two years.  *See* 18 U.S.C. § 3583(b)(2), (e)(3).  As a result, I recommend that Rideout's sentence for violating his conditions of supervised release be reduced to a maximum of two years, within the discretion of the Court.

## Conclusion

Based on the foregoing, I recommend that Rideout's § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Doc. 72) be GRANTED, and that the Court correct the sentence imposed on Rideout for violating the terms of his supervised release.  I also recommend that the government's Motion to Dismiss (Doc. 75), which the government has elected not to defend (Doc. 90), be DENIED.

Dated at Burlington, in the District of Vermont, this 28th day of March 2019.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c).  Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision."  *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).